Michelle Méndez, Esq.
Maryland Bar No. 20062
National Immigration Project (NIPNLG)
2201 Wisconsin Ave NW, Suite 200
Washington D.C. 20007
Tel: (540) 907-1761
Email: michelle@nipnlg.org

José Alfredo Hernández, Esq.
California Bar No. 212002
Law Office of José Alfredo Hernández
924 E. Chapman Ave
Orange, CA 92866
Tel: (714) 568-4529
Email: JoseAlfredo@1JAHLAW.com

Counsel for Plaintiff
Miguel Angel GONZALEZ GARCIA

UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Miguel Angel GONZALEZ GARCIA,<br><br>Plaintiff,<br>v.<br><br>DEPARTMENT OF HOMELAND SECURITY; Alejandro MAYORKAS, in his Official Capacity, Secretary, U.S. Department of Homeland Security; Tae JOHNSON, in his Official Capacity, Acting Director of U.S. Immigration and Customs Enforcement; Troy MILLER, in his Official Capacity, Acting Commissioner for U.S. Customs and Border Protection; Thomas GILES, in his Official Capacity, Field Office Director, Los Angeles Field Office of ICE;<br><br>Defendants. | Case No. _____<br><br>**PETITION FOR WRIT OF MANDAMUS AND WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br><u>Immigration Case</u><br>Agency No. A078-029-691 |

# INTRODUCTION

1. Plaintiff Miguel Angel Gonzalez Garcia ("Mr. Gonzalez Garcia") seeks an order compelling Defendants to facilitate his return to the United States and to permit him to enter the United States to pursue immigration relief for which he is eligible following a successful motion to reopen his prior removal order.

2. Mr. Gonzalez Garcia is a long-term resident of the United States whose wife and daughter are U.S. citizens living in California. Mr. Gonzalez Garcia is currently living in Mexico and has been separated from his family for more than eleven years.

3. On December 1, 2011, an immigration judge ordered Mr. Gonzalez Garcia removed based on a criminal conviction, which disqualified him from adjusting his status to that of a lawful permanent resident or applying for cancellation of removal as a nonpermanent resident. He was physically removed from the United States on or about December 11, 2011 and has remained in Mexico since. On April 2, 2021, the Orange County Superior Court vacated Mr. Gonzalez Garcia's underlying conviction and dismissed the charges against him. He then filed a motion to reopen and terminate his removal proceedings with the immigration court based on the vacatur of his conviction so that he could apply for adjustment of status, or alternatively, for cancellation of removal as a nonpermanent resident.

4. The immigration court granted Mr. Gonzalez Garcia's motion to reopen on June 15, 2021, finding that the vacated conviction constituted an extraordinary circumstance that warranted reopening and that Mr. Gonzalez Garcia had demonstrated his statutory eligibility for adjustment of status as the spouse of a U.S. citizen pursuant to INA § 245(i) (8 U.S.C. § 1255(i)).

5. Despite this favorable decision, Mr. Gonzalez Garcia has since remained stranded in Mexico and has been unable to reenter the United States to adjust his status or pursue cancellation of removal. Defendants have refused to

facilitate Mr. Gonzalez Garcia's return to the United States and have refused to allow him to enter at a port of entry.

6. Defendants' refusal to facilitate Mr. Gonzalez Garcia's return to the United States and refusal to allow him entry violates the Due Process Clause of the Fifth Amendment and is a violation of their mandatory duties under the Immigration and Nationality Act and the Administrative Procedures Act.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the present action based on 28 U.S.C. § 1331 (Federal Question), 5 U.S.C. § 702 *et seq.* (Administrative Procedures Act), 28 U.S.C. §§ 2201 and 2202 (Declaratory Judgment Act), 28 U.S.C. § 2241 (Habeas), 28 U.S.C. § 1361 (Mandamus), and 28 U.S.C. § 1651 (All Writs Act).

8. Venue is properly with this Court pursuant to 28 U.S.C. § 1391(e) because this is a civil action in which a substantial part of the events giving rise to this claim occurred in this District and Defendant Giles is an employee or officer of the United States, acting in his official capacity, who resides in this District. Further, Mr. Gonzalez Garcia resided in this District prior to his removal to Mexico and intends to reside in this District upon his return.

## PARTIES

9. Plaintiff Miguel Angel GONZALEZ GARCIA is a long-term resident of twenty years of the United States who is currently stranded in Mexico.

10. Defendant DEPARTMENT OF HOMELAND SECURITY ("DHS") is the federal agency encompassing U.S. Immigration and Customs Enforcement ("ICE") and Customs and Border Protection ("CBP"), which is responsible for, *inter alia*, the removal of non-citizens, enforcement of the Immigration and Nationality Act ("INA"), and facilitation of return of deported noncitizens who

prevail in their immigration cases after removal.

11. Defendant Alejandro MAYORKAS is sued in his official capacity as the Secretary of the U.S. Department of Homeland Security. In this capacity, he has responsibility for the administration and enforcement of the immigration and naturalization laws. *See* 8 U.S.C. § 1103(a); *see also* § 402 of the Homeland Security Act of 2002, 107 Pub. L. No. 296, 116 Stat. 2135 (Nov. 25, 2002).

12. Defendant Tae JOHNSON is sued in his official capacity as Acting Director of ICE. In this capacity, he is empowered to facilitate Mr. Gonzalez Garcia's return to the United States, including issuance of travel documents.

13. Defendant Troy MILLER is sued in his official capacity as Acting Commissioner of CBP. In this capacity, he is empowered to facilitate Mr. Gonzalez Garcia's return to the United States, including in ensuring that Mr. Gonzalez Garcia be allowed to enter the country through a CBP port of entry along the U.S.-Mexico border.

14. Defendant Thomas GILES is sued in his official capacity as Acting Field Office Director, Los Angeles Field Office of ICE. The Los Angeles Field Office encompasses the ICE Enforcement and Removal Office ("ERO") with responsibility over executing removal orders and facilitating returns. The Los Angeles ERO office has refused to facilitate the timely return of Mr. Gonzalez Garcia.

## LEGAL BACKGROUND

*Motions to Reopen*

15. The INA guarantees noncitizens who have been ordered removed the right to pursue reopening of their removal order. 8 U.S.C. § 1229a(c)(7); 8 C.F.R. § 1003.23; *see also Dada v. Mukasey*, 554 U.S. 1, 15 (2008) (the INA "guarantees to each [noncitizen] the right to file" a motion to reopen proceedings).

16. Congress codified this statutory right to file a motion to reopen through the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act

(IIRIRA) of 1996. *See* Pub. L. No. 104-208, 110 Stat. 3009-593 (Sept. 30, 1996).

17. The physical removal of an individual does not preclude that person from pursuing a motion to reopen. *See Toor v. Lynch*, 789 F.3d 1055, 1060 (9th Cir. 2015); *Rubalcaba v. Garland,* 998 F.3d 1031, 1041 (9th Cir. 2021). Congress's 1996 amendments to the INA were designed to "encourage[e] prompt voluntary departure and speedy government action, while eliminating prior statutory barriers to pursuing relief from abroad." *Coyt v. Holder*, 593 F.3d 902, 906 (9th Cir. 2010). "It would completely eviscerate the statutory right to reopen provided by Congress if the agency deems a motion to reopen constructively withdrawn whenever the government physically removes the petitioner while his motion is pending." *Id*. at 907.

18. Where an immigration judge or the BIA grants a motion to reopen, the deported individual's removal order is vacated and it is "as if [the removal order] had never occurred." *Bonilla v. Lynch,* 840 F.3d 575, 589–90 (9th Cir. 2016). The "previously terminated immigration proceedings thus are reinstated, and the alien is restored to his prior status." *Id.*

19. In the reopened immigration proceedings, a noncitizen may pursue any forms of immigration relief available, including adjustment of status and cancellation of removal. *See* 8 C.F.R. § 1240.49(a); 8 C.F.R. § 1240.11(a)(1). In many cases, the sole reason for seeking a motion to reopen is so that an individual can apply for relief—such as adjustment of status or cancellation of removal—for which they are newly eligible based on changed law or circumstances.

*Adjustment of Status*

20. Section 245(a) of the INA allows individuals who have been admitted or paroled into the United States and who are eligible for an immigrant visa to adjust status to that of a lawful permanent resident without having to leave the country and submit to consular processing. *See* 8 U.S.C. § 1255(a).

21. Section 245(i) of the INA allows certain individuals who entered the United States without authorization to pay a $1000 fee, waive their immigration violations, and adjust their status to that of a lawful permanent resident. *See* 8 U.S.C. § 1255(i).

22. Section 245(i) adjustment is only available to individuals for whom an employment or family-based immigrant petition was filed on or before April 30, 2001. *Id.*

23. An individual seeking adjustment of status must be physically present in the United States. *See* 8 U.S.C. § 1255(i)(1) (adjustment is only available to a noncitizen "physically present in the United States"); *see also* 8 C.F.R. § 245.1(a) (same).

*Cancellation of Removal for Nonpermanent Residents*

24. Certain nonpermanent residents in removal proceedings may apply for cancellation of removal, which allows an individual who is otherwise inadmissible or deportable to avoid removal and adjust to the status of a lawful permanent resident. 8 U.S.C. § 1229b(b). Only an immigration judge may grant this relief. *See* 8 C.F.R. § 1240.20.

*ICE's Lack of a Return Policy for Individuals who Prevail on a Motion to Reopen*

25. In *Nken v. Holder,* 556 U.S. 418 (2009), the Office of the Solicitor General of the United States ("OSG") represented to the Supreme Court that the government has a policy and practice of providing "effective relief" to noncitizens who prevail in their case after being removed by facilitating their return to the United States. *Nken*, 556 U.S. at 435. The Court relied on this representation in its opinion. *Id.*[1]

---

[1] Three years after the *Nken* decision, the OSG corrected its representation to the Supreme Court, stating that ICE did not in fact have a return policy in place at the time the OSG made such representation to the Court in briefing and arguments in *Nken*. *See* U.S. Dep't of Justice, *Letter to*

26. On February 24, 2012, nearly three years after the *Nken* decision and for the first time, ICE issued policy directive 11061.1 ("Return Policy Directive"), describing its return policy. *See* U.S. ICE, Directive 11061.1: Facilitating the Return to the United States of Certain Lawfully Removed Aliens, *available* at https://www.ice.gov/doclib/foia/dro_policy_memos/11061.1_current_policy_facilitating_return.pdf.

27. The Return Policy Directive states that ICE will only facilitate the return of noncitizens who prevailed in litigation before the United States Supreme Court or a U.S. court of appeals.

28. Notwithstanding the Return Policy Directive, ICE does not have a policy to return noncitizens who prevail in their case after being removed if they prevailed before the immigration court or Board of Immigration Appeals ("BIA") on a motion to reopen, as opposed to the Supreme Court or a U.S. court of appeals.

29. In the Joint Explanatory Statement for the most recent funding bill for DHS, Congress made clear its intention that DHS agencies must facilitate the return of individuals whose removal orders are reopened. "ICE, USCIS, and other DHS agencies shall leverage all mechanisms provided by current law to facilitate the return to the United States of those whose removal was contrary to law, whose removal order has since been overturned or reopened by judicial order [or] where the return of an individual would correct an error[.]" Joint Explanatory Statement accompanying Division F, FY 2022 Consolidated Appropriations Act, 168 Cong. Rec. 2402. "Efforts shall be taken to ensure that the individual is restored to prior lawful status, to the greatest extent possible, or the ability to adjust to lawful status." *Id.*

---

*Chief Justice Souter Re: Jean Marc Nken v. Holder, S. Ct. No. 08-681* (Apr. 24, 2012), available at https://nipnlg.org/sites/default/files/2023-05/2012_24Apr_osg-ltr-supct.pdf.

## STATEMENT OF FACTS

30. Mr. Gonzalez Garcia is a citizen and national of Mexico who entered the United States without inspection in or around August 1991.

31. Mr. Gonzalez Garcia lived in the United States for twenty years, during which time he married a lawful permanent resident, Patricia Gonzalez, who later naturalized. In 1994, Mr. Gonzales Garcia's wife gave birth to the couple's daughter, Elizabeth. Mr. Gonzalez Garcia's wife and daughter still reside in southern California and Mr. Gonzalez Garcia plans to reside there with them upon his return.

32. On April 30, 2001, Mr. Gonzalez Garcia's wife filed an I-130 Petition for Alien Relative on behalf of Mr. Gonzalez Garcia. USCIS approved the petition on July 26, 2002.

33. On December 8, 2003, Mr. Gonzalez Garcia was convicted for violating California Health & Safety Code § 11378, possession for sale of methamphetamine. He was sentenced to 120 days of incarceration.

34. On October 21, 2011, the Department of Homeland Security (DHS) initiated removal proceedings against Mr. Gonzalez Garcia.

35. In those removal proceedings, Mr. Gonzalez Garcia applied for nonpermanent resident cancellation of removal under INA § 240A(b) (8 U.S.C. § 1229b(b)) based on hardship to his U.S. citizen spouse and child, and adjustment of status under INA § 245(i) (8 U.S.C. § 1255(i)) based on his marriage to a U.S. citizen.

36. On December 1, 2011, an immigration judge determined that Mr. Gonzalez Garcia's conviction for CA HS § 11378 rendered him statutorily ineligible for nonpermanent resident cancellation of removal and adjustment of status under Section 245(i) and ordered his removal. On or about December 11, 2011, DHS physically removed Mr. Gonzalez Garcia to Mexico where he has been living since his removal.

37. On April 2, 2021, the Orange County Superior Court vacated Mr. Gonzalez Garcia's underlying conviction as legally invalid due to prejudicial error and dismissed the underlying charges.

38. On May 24, 2021, based on the vacatur of his conviction, Mr. Gonzalez Garcia, through counsel, filed a motion to reopen his removal proceedings with the immigration court.

39. On June 15, 2021, the immigration court granted Mr. Gonzalez Garcia's motion to reopen his removal proceedings. In the order granting reopening, the immigration court found that the vacated conviction constituted an extraordinary circumstance that warranted reopening. Further, the court found that Mr. Gonzalez Garcia had demonstrated his statutory eligibility for adjustment of status as the spouse of a U.S. citizen pursuant to Section 245(i) and had demonstrated a substantial likelihood that the result of his case would change if reopening were granted.

*Mr. Gonzalez Garcia's Efforts to Return to the United States*

40. Since his removal order was reopened in June of 2021, Mr. Gonzalez Garcia has tried to lawfully return to the United States so that he can participate in his reopened removal proceedings, attend the required biometrics appointment, adjust his status to that of a lawful permanent resident, and be reunited with his wife and daughter.[2]

41. On November 4, 2021, Mr. Gonzalez Garcia's immigration counsel submitted a return facilitation request to ICE Enforcement and Removal Operations (ERO), requesting that Mr. Gonzalez Garcia be paroled into the United States to be able to attend his scheduled merits hearing in immigration court and to be able to

---

[2] In September of 2021, Mr. Gonzalez Garcia, through counsel, applied to USCIS to adjust status under INA § 245(i) and paid the required $1000 fee. USCIS confirmed receipt of the application and fee on September 20, 2021, and scheduled Mr. Gonzalez Garcia for a biometrics appointment in Buena Park, California on October 21, 2021. Mr. Gonzalez Garcia was not able to attend this appointment, nor the subsequently rescheduled appointments, as he was physically outside of the United States and unable to enter.

process his biometrics for purposes of his pending adjustment of status application.

42. On November 10, 2022—a full year after Mr. Gonzalez Garcia submitted his parole request—ICE ERO Los Angeles denied the request on the basis that Mr. Gonzalez Garcia's case did not fit within the limited coverage of the Return Policy Directive which only requires ICE to facilitate return for individuals who prevail on petitions for review to the U.S. Supreme Court or Courts of Appeals. *See* ICE Directive 11061.1.

43. Following the denial of the parole request, an ICE Los Angeles Assistant Field Office Director told Mr. Gonzalez Garcia's immigration counsel that he would have to coordinate his client's parole with CBP.

44. Mr. Gonzalez Garcia then presented himself at two different land ports of entry in the San Diego-Tijuana region, seeking to be paroled into the United States based on his reopened removal order and pending removal proceedings. CBP officers denied him entry.

45. Immigration counsel communicated with a representative from CBP, who indicated that to be paroled into the United States, Mr. Gonzalez Garcia would need a court order or subpoena to present at the port of entry, and that ICE would have to escort him to his immigration proceedings.

46. On February 13, 2023, Mr. Gonzalez Garcia's counsel filed a motion for a subpoena with the immigration judge overseeing the reopened removal proceedings, requesting a subpoena be issued for Mr. Gonzalez Garcia's presence at his individual merits hearing, then scheduled for October 26, 2023. On February 28, 2023, the immigration judge denied the motion for a subpoena on the basis that the immigration court did not have authority to compel DHS to parole Mr. Gonzalez Garcia into the country. There is no other forum in which Mr. Gonzalez Garcia can seek a subpoena to command his appearance in immigration court. *See* 8 U.S.C. § 1003.35(b).

47. On April 12, 2023, Assistant Chief Counsel for ICE filed a motion with

the immigration court to dismiss Mr. Gonzalez Garcia's proceedings on the basis that Mr. Gonzalez Garcia was outside the United States. The immigration court granted the motion and dismissed proceedings the following day, April 13, 2023, without giving Mr. Gonzalez Garcia an opportunity to respond to ICE's motion. Mr. Gonzalez Garcia promptly filed a motion to reconsider the dismissal on April 19, 2023, on the basis that dismissing Mr. Gonzalez Garcia's reopened proceedings unfairly prevented him from seeking immigration relief for which he is eligible.

48. On April 27, 2023, the immigration court granted Mr. Gonzalez Garcia's motion to reconsider dismissal and reopened Mr. Gonzalez Garcia's removal proceedings. Mr. Gonzalez Garcia's case is now scheduled for a master calendar hearing (a preliminary/scheduling hearing) on May 30, 2023 in immigration court.

49. Mr. Gonzalez Garcia remains stranded in Mexico and, without the assistance of Defendants, has no means of returning to the United States to participate in his reopened removal proceedings and to seek immigration relief for which he is otherwise eligible.

## CAUSES OF ACTION

### Count One

### Violation of the Immigration and Nationality Act

50. All of the foregoing allegations are re-alleged and incorporated by reference.

51. The Immigration and Nationality Act guarantees Mr. Gonzalez Garcia the right to pursue reopening of a removal order. *See* 8 U.S.C. § 1229a(c)(7); 8 C.F.R. § 1003.23.

52. Where an immigration judge grants a motion to reopen, the deported individual's removal order is vacated and it is "as if [the removal order] had never occurred." *Bonilla v. Lynch,* 840 F.3d at 589–90. The "previously terminated

immigration proceedings thus are reinstated, and the alien is restored to his prior status." *Id.*

53. Just as an individual's statutory right to reopen cannot be eviscerated by the government's physical removal of that person, *Coyt,* 593 F.3d at 96, it similarly should not be eviscerated by allowing the government to prevent a person's return even where he has prevailed on a motion to reopen and would be eligible for relief but for his lack of physical presence in the United States.

54. When the immigration court granted Mr. Gonzalez Garcia's motion to reopen his removal proceedings in 2021, the court vacated his removal order and restored his prior status to that of a prospective lawful permanent resident, with statutory eligibility to adjust his status pursuant to 8 U.S.C. § 1255 and apply for cancellation of removal pursuant to 8 U.S.C. § 1229b.

55. In reopening proceedings, the immigration judge specifically recognized that Mr. Gonzalez Garcia was statutorily eligible for Section 245(i) adjustment and should be permitted to pursue said adjustment in reopened removal proceedings. Mr. Gonzalez Garcia has a right to pursue adjustment of status while in removal proceedings. *See* 8 C.F.R. § 1240.49(a) (a respondent in removal proceedings may apply to the immigration judge for adjustment of status under section 245 of the INA). However, to pursue adjustment of status, Mr. Gonzalez Garcia must be physically present within the United States. *See* 8 U.S.C. § 1255(i); *see also* 8 C.F.R. § 245.1(a) (same). Mr. Gonzalez Garcia cannot legally reenter the United States without travel facilitation from Defendants.

56. Mr. Gonzalez Garcia also has a right to seek cancellation of removal as a nonpermanent resident in removal proceedings. *See* 8 C.F.R. § 1240.11(a)(1) (a respondent in removal proceedings may apply to the immigration judge for cancellation of removal). If Defendants do not allow Mr. Gonzalez Garcia to return to the United States to participate in his removal proceedings, he will be functionally prevented from seeking cancellation of removal.

57. Despite Mr. Gonzalez Garcia's success on his motion to reopen, Defendants refuse to permit him to return to the United States, thereby rendering his statutory and regulatory rights meaningless. Defendants have placed Mr. Gonzalez Garcia in a position where he cannot derive any actual benefit from the immigration court's favorable decision reopening his removal proceedings.

58. In refusing to facilitate Mr. Gonzalez Garcia's return and denying him entry to the United States after he prevailed on his motion to reopen, Defendants have eviscerated his statutory right to reopen his proceedings in violation of 8 U.S.C. § 1229a(c)(7) and are preventing him from accessing immigration relief to which he is entitled after prevailing on his motion to reopen.

59. Defendants' refusal to return Mr. Gonzalez Garcia to the United States thus violates the Immigration and Nationality Act at 8 U.S.C.§ 1229a(c)(7), 8 C.F.R. § 1003.23, 8 C.F.R. § 1240.49(a), and 8 C.F.R. § 1240.11(a)(1).

## Count Two

### Violation of the Administrative Procedure Act

(*Agency Action Unlawfully Withheld*)

60. All of the foregoing allegations are re-alleged and incorporated by reference.

61. Under the Administrative Procedure Act, a reviewing court shall compel agency action unlawfully withheld. 5 U.S.C. § 706(1).

62. Defendants have a duty to act here. Mr. Gonzalez Garcia has statutory, regulatory, and Fifth Amendment Due Process right to return following reopening of his removal order. 8 U.S.C. § 1229a(c)(7), 8 C.F.R. § 1003.23; 8 C.F.R. § 1240.49(a); U.S. CONST. amend. V. Defendants are thus required to facilitate Mr. Gonzalez Garcia's return to the United States and permit him entrance at a port of entry so that Mr. Gonzalez Garcia can seek immigration relief to which he is statutorily eligible after prevailing on his motion to reopen.

63. Defendants have unlawfully withheld agency action. Defendants have refused to facilitate return and denied Mr. Gonzalez Garcia entry to the United States.

64. Defendants' refusal violates 8 U.S.C. § 1229a(c)(7), 8 C.F.R. § 1003.23, 8 C.F.R. § 1240.49(a), 8 C.F.R. § 1240.11(a)(1), and the Due Process Clause of the Fifth Amendment, and is contrary to the immigration judge's favorable decision reopening his removal proceedings and the Supreme Court and Ninth Circuit's admonishments recognizing the right to reopening.

65. Defendants' refusal to facilitate Mr. Gonzalez Garcia's return harms him by prohibiting his return to his family in the United States and preventing him from accessing immigration relief for which he is otherwise statutorily eligible.

66. Defendants' actions constitute an unlawful withholding of an agency action in violation of the Administrative Procedure Act.

## Count Three

### Violation of the Administrative Procedure Act

### (*Arbitrary & Capricious Agency Action*)

67. All of the foregoing allegations are re-alleged and incorporated by reference.

68. The APA provides that a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

69. The reviewing court shall "shall . . . hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

70. Under the APA an "agency action must be based on non-arbitrary, relevant factors." *Judulang v. Holder*, 132 S. Ct. 476, 485 (2011).

71. ICE's Return Policy Directive only facilitates the return of non-citizens who prevail before the Court of Appeals and the Supreme Court. Non-citizens like

Mr. Gonzalez Garcia, who win their case before an immigration court or the BIA are not covered by the policy and have no means of lawfully returning to the United States.

72. The current policy frustrates Congress's intent to provide individuals with a guaranteed statutory right to reopen their proceedings. The rule overlooks the fact that it leaves individuals who have prevailed on reopening their cases without any relief. Finally, it relies on an arbitrary distinction between motions to reopen litigated at the agency level and those litigated before a Courts of Appeals – a distinction not otherwise made by Congress as nothing in the INA explicitly or implicitly restricts an individual's benefit arising from a motion to reopen litigated up to the Court of Appeals as opposed to one that is immediately successful before the immigration court.

73. Further, where Defendants refuse to facilitate the return of individuals after successful motions to reopen, they prevent individuals from accessing benefits to which they are statutorily eligible that require their presence within the country.

74. Defendants have not articulated any reasoned explanation for this distinction and failed to consider relevant factors. Defendants' Return Policy Directive and refusal to facilitate the return of Mr. Gonzalez Garcia after his successful motion to reopen is arbitrary, capricious, and contrary to law.

75. Defendant's refusal to facilitate Mr. Gonzalez Garcia's return harms him by, *inter alia*, prohibiting him from reuniting with his family and exercising his right to apply for immigration relief for which he is statutorily eligible.

### Count Four
### Violation of the Fifth Amendment Due Process Clause

76. All of the foregoing allegations are re-alleged and incorporated by reference.

77. The Fifth Amendment to the U.S. Constitution provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. Due process requires that Mr. Gonzalez Garcia may not be removed from the United States without a full and fair hearing. *See, e.g., Colmenar v. INS*, 210 19 F.3d 967, 971 (9th Cir. 2000) (emphasis added) (an individual "who faces deportation is entitled to a *full and fair* hearing of his claims and a *reasonable* opportunity to present evidence on his behalf.").

78. Denying Mr. Gonzalez Garcia the ability to benefit from the immigration court's favorable decision reopening removal proceedings and apply for relief to which he is statutorily eligible *de facto* renders him deported from the United States without a hearing, in violation of his right to Due Process.

79. Defendants' refusal to facilitate Mr. Gonzalez Garcia's return harms him by, *inter alia*, prohibiting him from reuniting his family and exercising his right to apply for immigration relief for which he is statutorily eligible.

80. Due Process requires that Defendants facilitate Mr. Gonzalez Garcia's return and permit him entry to the United States.

## Count Five
### Writ of Mandamus, 28 U.S.C. § 1361

81. All of the foregoing allegations are re-alleged and incorporated by reference.

82. Mandamus is available to compel a federal official or agency to perform a duty if: (1) there is a clear right to the relief requested; (2) defendant has a clear, nondiscretionary duty to act; and (3) there is no other adequate remedy available. *See* 28 U.S.C. § 1361.

83. Mr. Gonzalez Garcia has a statutory and regulatory right to pursue reopening of a removal order. *See* 8 U.S.C. § 1229a(c)(7); 8 C.F.R. §§ 1003.2; 1003.23.

84. Where an immigration judge grants a motion to reopen, the deported individual's removal order is vacated and it is "as if [the removal order] had never occurred." *Bonilla v. Lynch,* 840 F.3d at 589–90.

85. On June 15, 2021, an immigration judge granted Mr. Gonzalez Garcia's motion to reopen his removal proceedings, vacating his removal order and restoring his status to that of a prospective lawful permanent resident, with statutory eligibility to adjust his status pursuant to 8 U.S.C. § 1255 and apply for cancellation of removal pursuant to 8 U.S.C. § 1229b.

86. To pursue adjustment of status, Mr. Gonzalez Garcia must be physically present within the United States. *See* INA § 245(i) (8 U.S.C. § 1255(i)). Mr. Gonzalez Garcia cannot legally reenter the United States without facilitation from Defendants.

87. Mr. Gonzalez Garcia has a right to pursue adjustment of status while in removal proceedings. *See* 8 C.F.R. § 1240.49(a) (a respondent in removal proceedings may apply to the immigration judge for adjustment of status under section 245 of the INA).

88. Mr. Gonzalez Garcia also has a right to seek cancellation of removal as a nonpermanent resident in removal proceedings. *See* 8 C.F.R. § 1240.11(a)(1) (a respondent in removal proceedings may apply to the immigration judge for cancellation of removal). If Defendants do not allow Mr. Gonzalez Garcia to return to the United States to participate in his removal proceedings, he will be functionally prevented from seeking cancellation of removal.

89. Despite Mr. Gonzalez Garcia's success on his motion to reopen, Defendants refuse to permit him to return to the United States, thereby rendering his statutory and regulatory rights meaningless. Defendants have placed Mr. Gonzalez Garcia in a position where he cannot derive any actual benefit from the immigration court's favorable decision reopening his removal proceedings.

90. Mr. Gonzalez Garcia has a statutory, regulatory, and constitutional right to return to the United States.

91. Defendants' refusal to return Mr. Gonzalez Garcia to the United States violates 8 U.S.C. § 1229a(c)(7), 8 C.F.R. § 1003.23, 8 C.F.R. § 1240.49(a), 8 C.F.R. § 1240.11(a)(1), the APA, and the Due Process Clause of the U.S. Constitution and is contrary to the immigration judge's favorable decision reopening his removal proceedings and the Supreme Court and Ninth Circuit's admonishments recognizing the right to reopening.

92. Defendants have a clear, non-discretionary duty to facilitate Mr. Gonzalez Garcia's return and permit him entry.

93. There are no other adequate remedies available.

## Count Six

### Writ of Habeas Corpus, 28 U.S.C. § 2241(c)(3)

94. All of the foregoing allegations are re-alleged and incorporated by reference.

95. 28 U.S.C. § 2241(c)(3) provides that an individual can invoke the writ of habeas corpus where "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

96. Section 2241's requirement of custody is "broadly construed to include restriction from entry into the United States, since denial of entry amounts to a restraint on liberty." *Subias v. Meese*, 835 F.2d 1288, 1289 (9th Cir. 1987) (citing *Jones v. Cunningham*, 371 U.S. 236, 239 (1963)). Deported individuals are also considered in custody where "extreme circumstances" are present, such as said individual's unlawful removal from the United States. *Rivera v. Ashcroft*, 394 F.3d 1129, 111 F. App'x 532, 2004 WL 2383346 at *1 (9th Cir. 2004) (citing *Singh v. Waters*, 87 F.3d 346, 347 (9th Cir. 1996)). Extreme circumstances are present here. The conviction that led to Mr. Gonzalez Garcia's removal has been vacated as

constitutionally invalid, his removal order has been reopened, and he has been denied travel facilitation and entry into the United States to benefit from his reopened removal proceedings, rendering his statutory right to a motion to reopen meaningless and subjecting him to a *de facto* unlawful deportation. Mr. Gonzalez Garcia is thus in custody for purposes of 28 U.S.C. § 2241.

97. Defendants' refusal to facilitate return or permit entry violates 8 U.S.C. § 1229a(c)(7); 8 C.F.R. § 1003.23, 8 C.F.R. § 1240.49(a), 8 C.F.R. § 1240.11(a)(1), the APA, and the Due Process Clause of the U.S. Constitution and is contrary to the immigration judge's favorable decision reopening Mr. Gonzalez Garcia's removal proceedings and the Supreme Court and Ninth Circuit's admonishments recognizing the right to reopening.

98. To remedy Mr. Gonzalez Garcia's unlawful custody, Defendants must facilitate and permit him entry into the United States.

### Count Seven
### All Writs Act, 28 U.S.C § 1561

99. All of the foregoing allegations are re-alleged and incorporated by reference.

100. 28 U.S.C. § 1651 provides the Supreme Court and all courts established by Act of Congress to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

101. If this Court finds that there is no other vehicle for providing relief to Mr. Gonzalez Garcia, the Court may still grant relief through the All Writs Act as deemed necessary and proper to ensure that Mr. Gonzalez Garcia can reenter the country and pursue immigration relief for which he is otherwise eligible, as is his right having prevailed on his motion to reopen.

# REQUEST FOR RELIEF

WHEREFORE, Mr. Gonzalez Garcia respectfully prays this Court to:

    (1) Accept jurisdiction over this action;

    (2) Declare Defendants' refusal to facilitate Mr. Gonzalez Garcia's return and denial of his entry to the United States to violate the Immigration and Nationality Act and implementing regulations, the Due Process Clause of the Fifth Amendment, and the Administrative Procedure Act;

    (3) Order Defendants to immediately facilitate Mr. Gonzalez Garcia's return and permit his entry at a port of entry to the United States;

    (4) Award reasonable costs and attorneys' fees; and

    (5) Grant such other and further relief as this Court deems just and proper under the circumstances.

Dated: May 23, 2023                                   Respectfully submitted,

| | |
|---|---|
| /s/ Michelle Méndez | /s/ José Alfredo Hernández |
| Michelle Méndez* | José Alfredo Hernández, Esq. |
| Maryland Bar No. 20062 | California Bar No. 212002 |
| National Immigration Project (NIPNLG) | Law Office of José Alfredo Hernández |
| 2201 Wisconsin Ave NW, Suite 200 | 924 E. Chapman Ave |
| Washington D.C. 20007 | Orange, CA 92866 |
| Tel: (540) 907-1761 | Tel: (714) 568-4529 |
| Email: michelle@nipnlg.org | Email: JoseAlfredo@1JAHLAW.com |

*Pro hac vice* application forthcoming

**Counsel for Miguel Angel Gonzalez Garcia**